JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS PURE TECH SYSTEMS, INC. | DEFENDANTS KEMPER ENVIRONMENTAL LTD and KEMPER INDEMNITY INSURANCE COMPANY |
|---|---|

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) VIJAYANT PAWAR, ESQ., 35 Airport Road, Suite 330, Morristown, New Jersey 07960 (973) 267-4800 | ATTORNEYS (IF KNOWN) VIJAYANT PAWAR, ESQ. |
|---|---|

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

28 U.S.C. 2201. Plaintiff alleges breach of contract and also seeks declaratory relief from the Court ruling that Defendants must provide insurance coverage pursuant the insurance policies.

Has this or a similar case been previously filed in SDNY at any time? No☒ Yes☐   Judge Previously Assigned

If yes, was this case Vol☐ Invol.☐ Dismissed. No☐ Yes☐   If yes, give date _____ & Case No._____

*(PLACE AN [x] IN ONE BOX ONLY)*          NATURE OF SUIT

**ACTIONS UNDER STATUTES**

**TORTS**

**CONTRACT**

[☒] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**

[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**

[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**

[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**

[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**

[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**

[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**

[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**

[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**

[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**

[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**

[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**

[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

---

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: ☒ YES ☐ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____ DOCKET NUMBER_____

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

(PLACE AN x IN ONE BOX ONLY)                              **ORIGIN**

[X] 1 Original    [ ] 2a. Removed from   [ ] 3 Remanded from   [ ] 4 Reinstated or    [ ] 5 Transferred from   [ ] 6 Multidistrict     [ ] 7 Appeal to District
     Proceeding        State Court     Appellate Court     Reopened         (Specify District)      Litigation           Judge from
              [ ] 2b. Removed from State Court                                                     Magistrate Judge
                    AND at least one party is a pro se litigant                                 Judgment

(PLACE AN x IN ONE BOX ONLY)            **BASIS OF JURISDICTION**         *IF DIVERSITY, INDICATE*

[ ] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION    [X] 4 DIVERSITY        *CITIZENSHIP BELOW.*
                                            (U.S. NOT A PARTY)                        *(28 USC 1332, 1441)*

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [ ] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [x] 5 | [x] 5 |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Pure Tech Systems, Inc.
211 Walnut, Suite 1
Rochester, Michigan 48307

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

KEMPER ENVIRONMENTAL LTD
1 Kemper Drive
Long Grove, Illinois 60049

KEMPER INDEMNITY INSURANCE COMPANY
1 Kemper Drive
Long Grove, Illinois 60049

DEFENDANT(S) ADDRESS UNKNOWN
    REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [X] FOLEY SQUARE
          (DO NOT check either box if this a PRISONER PETITION.)

| DATE | SIGNATURE OF ATTORNEY OF RECORD | ADMITTED TO PRACTICE IN THIS DISTRICT |
|---|---|---|
| 7-31-07 | *(signature)* | [ ] NO |
| RECEIPT # |  | [x] YES (DATE ADMITTED Mo. 12 Yr. 2001 ) |
|  |  | Attorney Bar Code # VP7642 |

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Law Offices of
VIJAYANT PAWAR, ESQ. (VP7642)
35 Airport Road, Suite 330
Morristown, New Jersey 07960
Tel.: (973) 267-4800
Fax: (973) 215-2882
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PURE TECH SYSTEMS, INC.<br><br>Plaintiff,<br><br>vs.<br><br>KEMPER ENVIRONMENTAL LTD, and<br>KEMPER INDEMNITY INSURANCE<br>COMPANY,<br><br>Defendants. | Hon.<br><br>Civil Action No.<br><br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Pure Tech Systems, Inc., by and through its local attorneys, Law Offices of Vijayant Pawar, and for its Complaint against Defendants, Kemper Environmental Ltd. and Kemper Indemnity Insurance Company, states as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff seeks coverage under two policies providing coverage for Closure and Post-Closure costs under Ohio law for a former waste oil facility located near in Cleveland, Ohio for which Defendants have denied coverage.

2.      Plaintiff, Pure Tech Systems, Inc. ("Pure Tech"), is an Ohio corporation, with its principal place of business at 211 Walnut, Suite 1, Rochester, Michigan 48307.

3.    Defendant, Kemper Environmental Ltd. ("Kemper Environmental"), upon information and belief, is a limited partnership with its corporate headquarters located at 1 Kemper Drive, Long Grove, Illinois 60049.

4.    Defendant, Kemper Indemnity Insurance Company ("Kemper Indemnity"), upon information and belief, is a California company, with its principal place of business at 1 Kemper Drive, Long Grove, Illinois 60049 (collectively, Defendants are referred to herein as "Kemper").

5.    This Court has subject matter jurisdiction pursuant to 28 USC §1332 because the claims are between a citizen of a state and a subject of a foreign state and the amount in controversy exceeds $75,000.

6.    The policies issued by Kemper provide that the Choice of Law for any dispute between the insurer and insured is New York.

7.    Venue is proper because the policies issued by Kemper require any lawsuit brought concerning coverage disputes in the State of New York.

## GENERAL ALLEGATIONS

8.    Research Environmental Industries ("Research Environmental") owned and operated a waste oil facility located at 2727 and 2655 Transport Road in Cleveland Ohio ("the Facility").

9.    Pure Tech obtained control of the Facility.

10.    On or about October 1, 1998, Kemper Environmental issued a Closure and/or Post Closure Care Insurance Policy (Policy No. 4YY 000228) to Research Oil.  Exhibit A.

11.    On or about July 23, 1999, Kemper Indemnity issued a Closure and/or Post-Closure Care Insurance Policy (Policy No. 4YY-000446) to Pure Tech, which replaced Policy

No. 4YY 000228).  Exhibit B.

12.    Research Oil underwent a financial restructuring and Pure Tech undertook the closure obligations of Research Environmental.

13.    Kemper Environmental acknowledged the transfer of the policy initially issued to Research Oil to Pure Tech.

14.    The policies were in full force and effect at all times relevant to this suit.

15.    In 1999, the Ohio Environmental Protection Agency ("Ohio EPA") ordered the closure of the Facility.

16.    On July 30, 1999, AON Risk Services, Inc. of Ohio ("AON"), provided notice of a possible "occurrence" to Kemper Environmental under the Research Environmental insurance policy.

17.    On August 23, 2000, Ohio EPA approved a Closure Plan for Pure Tech.

18.    Pure Tech's obligation for closure of the Facility was undertaken by TAJ Graphics Enterprises, L.L.C. ("TAJ Graphics").

19.    Kemper Insurance Companies informed Pure Tech that the Kemper Environmental policy was terminated for nonpayment of premium, even though Ohio law does not allow an insurer to cancel an insurance policy without giving the Ohio EPA 120-days notice of the cancellation.

20.    Kemper never provided notice to Ohio EPA of cancellation of either policy.

21.    On June 28, 2001, the Ohio EPA approved costs incurred by Pure Tech for payment by Kemper.

22.    Kemper acknowledged that Ohio EPA had approved the costs for closure, but did not make the initial payment because the losses at the time did not exceed the deductible amount.

3

23.    Subsequent to the Ohio EPA approval referenced above, Pure Tech incurred substantially more closure costs that exceeded the deductible amount.

24.    On May 12, 2005, TAJ Graphics, on behalf of Pure Tech, made a demand for coverage from Kemper Environmental for $675,123.79.

25.    On June 16, 2005, Kemper sent a letter denying coverage for Closure/Post-Closure costs under both policies.


## COUNT I – DECLARATORY RELIEF

26.    Plaintiff hereby restates Paragraphs 1 through 25 as though fully set forth herein.

27.    Plaintiff seeks a declaration from this Court pursuant to 28 U.S.C. § 2201 that Defendants must provide coverage pursuant to their Closure and/or Post Closure Care Insurance Policies (collectively "the Kemper policies") issued to Plaintiff.

28.    Kemper issued policies to Plaintiff for which it now disclaims coverage.

29.    Plaintiff is entitled to coverage under and/or Post Closure Care Insurance Policies Nos. 4YY 000228 and 4YY-000446.

30.    An actual controversy exists between Plaintiff and Defendants with respect coverage under the terms of Kemper's insurance policies.

31.    Plaintiff is entitled to a declaratory judgment that Plaintiff has coverage under the Kemper policies.

32.    Kemper must pay Plaintiff its closure costs under the terms of the Kemper policies.

**WHEREFORE**, Plaintiff requests that this Court enter a declaratory judgment declaring that Plaintiff has the right under the Kemper policies to recover its closure costs for the Facility.

4

## COUNT II – BREACH OF CONTRACT

33.    Plaintiff hereby restates Paragraphs 1 through 32 as though fully set forth herein.

34.    Plaintiff and Kemper entered into a valid and enforceable contract of insurance.

35.    Plaintiff has incurred closure costs for the Facility.

36.    The Kemper policies provide insurance coverage for closure costs incurred by Plaintiff.

37.    Plaintiff has made a claim for coverage to Kemper.

38.    Plaintiff has fulfilled its obligations under the terms of the Kemper policies.

39.    Kemper has disclaimed coverage.

40.    Kemper has materially breached the terms of the insurance contracts.

41.    Plaintiff has been damaged by Kemper's breach of the Kemper policies.


**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendants in an amount in excess of $75,000 together with its costs, interest, attorneys' fees and any other legal or equitable relief to which it is entitled.


                                        Respectfully submitted,

                                        Law Offices of
                                        VIJAYANT PAWAR

                                        Attorneys for Plaintiffs


                                        BY: _____
DATED:  July 31, 2007                        VIJAYANT PAWAR (VP7642)


5

GIARMARCO, MULLINS & HORTON, P.C.


BY:    PRO HAC VICE    (TBF)
**SEAN W. WALSH** (P48724)
**SAULIUS K. MIKALONIS** (P39486)
Attorneys for Plaintiff
Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, Michigan  48084-5280
☎(248) 457-7000

DATED:  July 31, 2007

## JURY DEMAND

Defendants request a trial by jury on all issues and counts so triable.

Law Offices of
VIJAYANT PAWAR

Attorneys for Plaintiff

BY: _____
VIJAYANT PAWAR (VP7642)

DATED:  July 31, 2007

## CERTIFICATION PURSUANT TO CIV. R. 7.1

I hereby certify that the matter in controversy is not the subject of any other court,

arbitration or administrative proceeding.

**Law Offices of**
**VIJAYANT PAWAR**

Attorneys for Plaintiff

BY: _____
VIJAYANT PAWAR (VP7642)

DATED:  July 31, 2007

# EXHIBIT A



Princeton Forrestal Village
136 Main Street, Suite 320
Princeton, NJ 08540-5735
1-800-679-0025

**KEMPER ENVIRONMENTAL, LTD.**
ISSUED THROUGH:
**INEX, The Insurance Exchange**

## CLOSURE AND/OR POST-CLOSURE CARE INSURANCE POLICY

### Claims-Made and Reported Form

### Declarations

Policy No. _____ 4L/Y 000228 _____

Renewal of Policy No. _____ N/A _____

Item I:   First Named INSURED:   Research Environmental Industries
          Address:                2777 Rockefeller Avenue
                                  Cleveland, OH  44115

Item II:  INSURED(S):            Research Environmental Industries

Item III: a:  The POLICY PERIOD is from October 1, 1998 to October 1, 1999 12:01 A.M. Standard Time at the address of the First Named INSURED shown above.

         b:  Retroactive Date: October 1, 1998.  This Policy does not apply to FINAL CLOSURE COSTS, PARTIAL CLOSURE COSTS, or POST-CLOSURE CARE COSTS incurred prior to this Retroactive Date.

Item IV:  a:  The Limit of Liability for Coverage A - FINAL CLOSURE COSTS is
              US $800,000 per CLAIM
              US $800,000 total all CLAIMS.

         b:  The Deductible Amount for Coverage A - FINAL CLOSURE COSTS is
             US $100,000 per CLAIM
             US $N/A total all CLAIMS.

Item V:   a:  The Limit of Liability for Coverage B - PARTIAL CLOSURE COSTS is
              US $N/A per CLAIM
              US $N/A total all CLAIMS.

         b:  The Deductible Amount for Coverage B - PARTIAL CLOSURE COSTS is
             US $N/A per CLAIM
             US $N/A total all CLAIMS.

The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

ET 70 04 (Ed. 10 97)

1

Item VI:  a:  The Limit of Liability for Coverage C - POST-CLOSURE CARE COSTS is
US $800,000 per CLAIM
US $800,000 total all CLAIMS.

          b:  The Deductible Amount for Coverage C - POST-CLOSURE CARE COSTS is
US $100,000 per CLAIM
US $N/A total all CLAIMS.

Item VII:  The total POLICY PERIOD aggregate Limit of Liability for all CLAIMS under Coverages A through C, as applicable, under this Policy is US $800,000.

Item VIII:  The CLOSURE PLAN prepared in order to comply with CLOSURE/POST-CLOSURE CARE REGULATIONS is identified as:
The Closure Plan for the RCRA Regulated Storage Tanks at the Research Oil Co. Facility

Item IX:  The POST-CLOSURE PLAN prepared in order to comply with CLOSURE/POST-CLOSURE CARE REGULATIONS is identified as:
The Closure Plan for the RCRA Regulated Storage Tanks at the Research Oil Co. Facility

Item X:  The CLOSURE/POST-CLOSURE CARE REGULATIONS which govern the Closure and/or Post-Closure Care of the COVERED LOCATION(S) are:
3745-55-47 and 3745-66-47 of the Ohio Administrattive Code

Item XI:  The REGULATORY BODY acting in accordance with the CLOSURE/POST-CLOSURE CARE REGULATIONS is:
Ohio EPA

Item XII:       Covered Locations(s):    2655 Transport Road
Cleveland, OH 44115

Item XIII:  Policy Premium: US $16,000 (25% minimum earned)
The Policy Premium is XX pre-paid or payable in _____ equal installments due on _____.

Item XIV:  THE INSURED'S Broker/Representative is:    Ms. Linda Troyer
Address:                           Aon Risk Services Inc. of Ohio
1660 West 2nd Street
Suite 650
Cleveland, OH 44113

Item XV:  Forms and Endorsements Attached to this Policy at inception date:
ET 70 05 (Ed. 10 97)
Endorsement #1
Endorsement #2

              The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

ET 70 04 (Ed. 10 97)

2

Countersigned this 20th day of October, 1!

_Paul Mudd_

_____
Authorized Representative

Insurance coverage hereunder is provided to the Named Insured or Reinsured through the facilities of INEX (formerly known as the Illinois Insurance Exchange) 1 South Wacker Dr., Suite 2720, Chicago, IL 60606 (312-372-4639) and is issued in accordance with Article V ½ of the Illinois Insurance Code and the INEX Regulations. Coverage is provided solely by the underwriting syndicate(s) listed herein. INEX itself is not an insurer and, accordingly, is not a party to this contract and has no liability hereunder. Each underwriting syndicate listed accepts individual and several liability but has no joint liability.

The following applies only to policies issued in New Jersey:

THIS POLICY IS NOT PROTECTED BY THE NEW JERSEY SURPLUS LINES INSURANCE GUARANTY FUND, WHICH IS OBLIGATED TO PAY COVERED CLAIMS FOR CERTAIN OTHER SURPLUS LINES INSURERS UP TO THE LIMITS PROVIDED BY LAW. ALTHOUGH INEX (FORMERLY KNOWN AS THE ILLINOIS INSURANCE EXCHANGE) MAINTAINS ITS OWN GUARANTY FUND, THAT FUND IS NOT EXAMINED BY THE NEW JERSEY DEPARTMENT OF INSURANCE AND THE DEPARTMENT MAKES NO REPRESENTATIONS ABOUT ANY PROTECTION THAT MAY BE AVAILABLE.

The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

ET 70 04 (Ed. 10 97)                    3                    3



Princeton Forrestal Village
136 Main Street, Suite 320
Princeton, NJ 08540-5735
1-800-679-0025

**KEMPER ENVIRONMENTAL, LTD.**
ISSUED THROUGH:
**INEX, The Insurance Exchange**

# CLOSURE AND/OR POST-CLOSURE CARE INSURANCE POLICY

### This is a "Claims-Made and Reported" Insurance Policy -- Please Read Carefully

Policy No. _____ 4LY 000228 _____

Renewal of Policy No. _____ N/A _____

This Policy contains provisions that differ from other insurance policies and requires that FINAL CLOSURE, PARTIAL CLOSURE or POST-CLOSURE CARE COSTS be incurred by the INSURED during the POLICY PERIOD and reported to the Company in writing. There are also certain provisions herein that restrict or exclude coverage. Please read this Policy carefully.

## I. INSURING AGREEMENTS

In consideration of the premium paid and in reliance upon the statements contained in the application made a part hereof and any supplemental materials and information submitted herewith, and subject to all the terms and conditions of this Policy and the Declarations attached hereto, the Company agrees as follows in the event of a CLAIM to which this Policy applies:

A. Coverage A - CLAIMS FOR CLOSURE COSTS RESULTING FROM FINAL CLOSURE

To pay on behalf of the INSURED, or such party(ies) as the REGULATORY BODY designates in writing, for FINAL CLOSURE COSTS which the INSURED has or will become legally obligated to pay as a result of CLAIMS, subject to the Limits of Liability and Deductible Amount stated in Item IV of the Declarations.

B. Coverage B - CLAIMS FOR CLOSURE COSTS RESULTING FROM PARTIAL CLOSURE

To pay on behalf of the INSURED, or such party(ies) as the REGULATORY BODY designates in writing, for PARTIAL CLOSURE COSTS which the INSURED has or will become legally obligated to pay as a result of CLAIMS, subject to the Limits of Liability and Deductible Amount stated in Item V of the Declarations.

C. Coverage C - CLAIMS FOR POST-CLOSURE CARE COSTS

To pay on behalf of the INSURED, or such party(ies) as the REGULATORY BODY designates in writing, for POST-CLOSURE CARE COSTS which the INSURED has or will become legally obligated to pay as a result of CLAIMS, subject to the Limits of Liability and Deductible Amount stated in Item VI of the Declarations.

The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

## II. DEFINITIONS

. CLAIM(S) means a written request by the INSURED, or such party(ies) as the REGULATORY BODY designates in writing, for payment of FINAL CLOSURE COSTS, PARTIAL CLOSURE COSTS and/or POST-CLOSURE CARE COSTS in accordance with the CLOSURE PLAN or POST-CLOSURE PLAN, provided that such request:

1. is first submitted in writing to and approved by the REGULATORY BODY during the POLICY PERIOD; and
2. is first reported in writing to the Company during the POLICY PERIOD.

. CLOSURE/POST-CLOSURE CARE REGULATIONS means the regulations identified in Item X of the Declarations which govern the Closure and/or Post-Closure Care of the COVERED LOCATION(S).

. CLOSURE PLAN means the written document identified in Item VIII of the Declarations prepared in order to comply with CLOSURE/POST-CLOSURE CARE REGULATIONS.

. COVERED LOCATION(S) means any property listed in Item XII of the Declarations.

. FINAL CLOSURE COSTS means all costs or expenses identified in the CLOSURE PLAN that are required to implement the CLOSURE PLAN in its entirety and in accordance with the complete and final Closure of a COVERED LOCATION(S).

. INSURED means the entity(ies) identified in Item II of the Declarations including any director, officer, partner, employee thereof while acting within the scope of his/her duties as such.

. PARTIAL CLOSURE COSTS means all costs or expenses identified in the CLOSURE PLAN that are required to implement any portion of the CLOSURE PLAN applicable to any portion of, and not the complete and final Closure of, a COVERED LOCATION.

. POLICY PERIOD means the period stated in Item III of the Declarations, or any shorter period arising as a result of:

1. cancellation of this Policy; or
2. the deletion of a COVERED LOCATION from this Policy; or
3. the abandonment, giving away, or sale or assignment of a COVERED LOCATION to a successor owner or operator without the written consent of the Company, which shall not be unreasonably withheld.

. POST-CLOSURE CARE COSTS means all costs or expenses identified in the POST-CLOSURE PLAN.

. POST-CLOSURE PLAN means the written document identified in Item IX of the Declarations prepared in order to comply with CLOSURE/POST-CLOSURE CARE REGULATIONS.

. REGULATORY BODY means the entity(ies) identified in Item XI of the Declarations which is acting in accordance with CLOSURE/POST-CLOSURE CARE REGULATIONS.

## III. TERRITORY

his Policy only applies to CLAIMS arising within and brought within the United States, its territories or possessions, Puerto Rico or anada.

The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

This Policy does not apply to expenses, losses, liabilities of, or damages of any kind incurred by, accruing to, or alleged to be liabilities of the INSURED which are not related to CLOSURE/POST-CLOSURE CARE REGULATIONS, or to CLAIMS:

1.  Additional Costs: based upon or arising out of any expenses, charges, or costs resulting from the investigation or defense of any liability of or obligation of the INSURED to pay for FINAL CLOSURE COSTS, PARTIAL CLOSURE, or POST-CLOSURE CARE COSTS;

2.  Fines/Penalties: based upon or arising out of civil, administrative or criminal fines or penalties, assessments, punitive, exemplary or multiplied damages imposed by reason of violation of any law or regulation;

3.  Known Condition(s): existing prior to the inception of this Policy, and reported to any officer, director, partner or other employee responsible for environmental affairs of the INSURED; or

4.  Suretyship/Insurance:  based upon or arising out of failure to maintain any form of surety, insurance or bond either with respect to the INSURED or any other entity(ies) or company(ies).

## V.  LIMITS OF LIABILITY AND DEDUCTIBLE

A.  This Policy is to pay for CLAIMS subject to the Deductible Amounts stated in Items IV, V, VI of the Declarations. The Limits of Liability for each individual CLAIM under this Policy for FINAL CLOSURE COSTS, PARTIAL CLOSURE COSTS or POST-CLOSURE CARE COSTS shall not exceed the respective amounts stated for "each CLAIM" in the Declarations. The Limits of Liability for all CLAIMS under this Policy for FINAL CLOSURE COSTS, PARTIAL CLOSURE COSTS or POST-CLOSURE CARE COSTS shall not exceed the respective amounts stated for "total all CLAIMS" in the Declarations.

B.  Payments for CLAIMS for FINAL CLOSURE COSTS, PARTIAL CLOSURE COSTS or POST-CLOSURE CARE COSTS shall be included within the respective Deductible Amounts stated in Items IV, V and VI of the Declarations respectively.  If the Company advances all or any part of the Deductible Amounts, the INSURED, upon the Company's request, shall immediately reimburse the Company for any sums advanced.

Notwithstanding the above, the Company's total liability for all CLAIMS under this Policy shall not exceed the total POLICY PERIOD aggregate Limit of Liability stated in Item VII of the Declarations.

## VI.  REPORTING PROVISIONS

A.  In the event the INSURED receives any information that FINAL CLOSURE, PARTIAL CLOSURE COSTS or POST-CLOSURE CARE COSTS are to be incurred or are to be requested by the REGULATORY BODY, immediate written notice shall be given by the INSURED to the Company.

B.  The INSURED shall not, except at its own cost, voluntarily make or approve any payments, assume any obligations or incur any FINAL CLOSURE COSTS, PARTIAL CLOSURE COSTS or POST-CLOSURE CARE COSTS (which are not in accordance with the CLOSURE PLAN or POST-CLOSURE PLAN) without the Company's written consent, which shall not be unreasonably withheld.

C.  The INSURED shall cooperate with the Company and, upon the Company's request, assist in obtaining information relative to any CLAIMS made.

D.  All CLAIMS under the Policy shall be sent to:

The insurance hereby evidenced is written by an approved non-licensed insurer in the State of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

Kemper Environmental
Princeton Forrestal Village
136 Main Street, Suite 320
Princeton, NJ 08540-5735
(609) 936-3000

or any other address(es) as substituted by the Company in writing.

3

ET 70 05 (Ed. 10 97)

6

## VII. CONDITIONS

A. **Action Against Company:** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Company. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the INSURED to determine the INSURED'S liability, nor shall the Company be impleaded by the INSURED or its legal representative. Bankruptcy or insolvency of the INSURED or of the INSURED'S estate shall not relieve the Company of any of its obligations hereunder.

B. **Assignment:** This Policy shall be void if assigned or transferred without written consent of the Company. However, this Policy may be assigned to a successor owner or operator of a COVERED LOCATION, provided that the Company consents to such an assignment, which shall not be unreasonably withheld.

C. **Cancellation:** The Company shall not cancel, terminate, or fail to renew this Policy except for failure to pay the full premium stated in Item XIII of the Declarations. The Company shall notify the First Named INSURED and REGULATORY BODY of its intent to cancel, terminate or not to renew by sending, by certified mail, to the First Named INSURED at the address noted in Item I of the Declarations and to the REGULATORY BODY, written notice stating the date not less than 120 days thereafter allowing time for receipt of notice upon which such cancellation, termination or failure to review shall be effective.

This Policy may be cancelled by the First Named INSURED pursuant to applicable statute by surrender thereof to the Company or by mailing to the Company written notice stating the date thereafter the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD. In the event of cancellation or non-renewal by the First Named INSURED, or cancellation by the Company for non-payment of premium, the full premium shown in Item XIII of the Declarations shall be deemed earned and any unpaid portion thereof shall immediately be due and payable. Upon the effective date of cancellation by the First Named INSURED, all indemnity obligations on the part of the Company hereunder shall automatically cease and the First Named INSURED shall have no further recourse against the Company with respect to unpaid CLAIMS.

D. **Changes:** Notice to any agent or knowledge possessed by any agent or by any other person acting on behalf of the INSURED shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

E. **Choice of Forum:** In the event that the INSURED and the Company dispute the meaning, interpretation or operation of any term, condition, definition or provision of this Policy, or the fulfillment by the INSURED or the Company of any other obligations with respect to the Policy, the INSURED and the Company agree that in the event of litigation, all litigation shall take place in the State of New York. The INSURED and the Company shall submit to the jurisdiction of any court of competent jurisdiction within the State of New York, including federal courts, and will comply with all the requirements necessary to give such court jurisdiction. In the event of arbitration or other forms of dispute resolution, such resolution shall take place in the State of New York.

F. **Choice of Law:** In the event that the INSURED and the Company dispute the meaning, interpretation or operation of any term, condition, definition or provision of this Policy, or the fulfillment by the INSURED or the Company of any other obligations with respect to the Policy, resulting in litigation, arbitration or other form of dispute resolution, the INSURED and the Company agree that the law of the State of New York shall apply notwithstanding the State of New York's choice of law rules.

G. **Declarations and Representations:** By acceptance of this Policy, the INSURED agrees that the statements contained in the Declarations and applications, and any other supplemental materials and information submitted herewith, are its agreements and representations, that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between itself and the Company or any of its agents relating to this insurance.

The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

ET 70 05 (Ed. 10 97)                                                                                    4

H. **Inspection and Audit:** The Company shall be permitted but not obligated to inspect, sample and monitor on a continuing basis the INSURED'S property or operations, at any time. Neither the Company's right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of the INSURED or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

I. **Other Insurance:** Where other bonds, reserves, escrows, trust funds, other cash or credit or valid and collectable insurance is available to the INSURED for CLAIMS covered under the terms and conditions of the Policy, the Company's obligation to the INSURED is as follows:

1. this insurance shall apply as excess insurance over any other bonds, reserves, escrows, trust funds, other cash or credit or other valid and collectable insurance be it primary or excess;

2. where this insurance is excess over any other bonds, reserves, escrows, trust funds, other cash or credit or other valid and collectable insurance, the Company will pay only its share of the amount of CLAIMS, if any, that exceeds the total amount that all such other payment mechanisms will pay for the CLAIMS in the absence of this insurance.

J. **Sole Agent:** The First Named INSURED stated in Item I of the Declarations shall act on behalf of all INSUREDS for the payment or return of premium, payment of any Deductible Amounts, receipt and acceptance of any endorsement issued to form a part of this Policy, and giving and receiving notice of cancellation or non-renewal.

K. **Subrogation:** In the event of any payment under this Policy, the Company shall be subrogated to all the INSURED'S rights of recovery therefor against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The INSURED shall do nothing after a CLAIM to prejudice such rights.

IN WITNESS WHEREOF the Company has caused this Policy to be signed by its President and Executive Vice President and countersigned on the Declarations by a duly authorized agent of the Company.

*John W Reynolds*

President, Chief Executive Officer

*Paul Mundok*

Executive Vice President, Chief Underwriting Officer

insurance coverage hereunder is provided to the Named Insured or Reinsured through the facilities of INEX (formerly known as the Illinois Insurance Exchange) 1 South Wacker Dr., Suite 2720, Chicago, IL 60606 (312-372-4639) and is issued in accordance with Article V ½ of the Illinois Insurance Code and the INEX Regulations. Coverage is provided solely by the underwriting syndicate(s) listed herein. INEX itself is not an insurer and, accordingly, is not a party to this contract and has no liability hereunder. Each underwriting syndicate listed accepts individual and several liability but has no joint liability.

The following applies only to policies issued in New Jersey:

THIS POLICY IS NOT PROTECTED BY THE NEW JERSEY SURPLUS LINES INSURANCE GUARANTY FUND, WHICH IS OBLIGATED TO PAY COVERED CLAIMS FOR CERTAIN OTHER SURPLUS LINES INSURERS UP TO THE LIMITS PROVIDED BY LAW. ALTHOUGH INEX (FORMERLY KNOWN AS THE ILLINOIS INSURANCE EXCHANGE) MAINTAINS ITS OWN GUARANTY FUND, THAT FUND IS NOT EXAMINED BY THE NEW JERSEY DEPARTMENT OF INSURANCE AND THE DEPARTMENT MAKES NO REPRESENTATIONS ABOUT ANY PROTECTION THAT MAY BE AVAILABLE.

C 70 05 (Ed. 10 97)     The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.                                                                                             5

ß

## ENDORSEMENT No. 1

## SCHEDULE OF ENDORSEMENTS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 AM October 1, 1998, forms part of Policy No. 4LY 000228 issued to Research Environmental Industries by Kemper Environmental, Ltd., a member of INEX, The Insurance Exchange.

Subject to the terms and conditions of this Policy, it is agreed that the Endorsements attached to this Policy at the inception date of the Policy include the following:

1. Schedule of Endorsements
2. Deletion of Coverages

All other policy terms, conditions and endorsements of the Policy remain unchanged.

*Paul Murdok*

—————————————————
(Authorized Representative)

The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

9

## ENDORSEMENT No. 2

## DELETION OF COVERAGES ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement, effective 12:01 AM October 1, 1998, forms part of Policy No. 4LY 000228 issued to Research Environmental Industries by Kemper Environmental, Ltd., a member of INEX, The Insurance Exchange.

Subject to the terms and conditions of this Policy, it is hereby agreed that Section I. INSURING AGREEMENTS is amended by the deletion of the following Coverage Parts. The following Coverage Parts do not apply under this Policy:

B.  Coverage B – CLAIMS FOR CLOSURE COSTS RESULTING FROM PARTIAL CLOSURE

All other policy terms, conditions and endorsements of the Policy remain unchanged.

_(signature)_

_____

(Authorized Representative)

The insurance hereby evidenced is written by an approved non-licensed insurer in the state of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association.

10

# EXHIBIT B



Princeton Forrestal Village
136 Main St. Suite 326
Princeton, NJ 08540-5735

## KEMPER INDEMNITY INSURANCE COMPANY
### 445 South Figueroa
### Los Angeles, California 90071

## CLOSURE AND/OR POST-CLOSURE CARE INSURANCE POLICY

### Claims-Made and Reported Form

### Declarations

No. _____ 4YY 000446 _____

al of Policy No. _____ N/A _____

First Named INSURED:     Pure Tech Systems, Inc.
Address:                 2727 Transport Road
                         Cleveland, OH 44115

INSURED(S):              Pure Tech Systems, Inc.

I:  a:  The POLICY PERIOD is from <u>July 23, 1999</u> to <u>July 23, 2000</u> 12:01 A.M. Standard Time at the address of the First Named INSURED shown above.

b:  Retroactive Date: <u>July 23, 1999</u>.  This Policy does not apply to FINAL CLOSURE COSTS, PARTIAL CLOSURE COSTS, or POST-CLOSURE CARE COSTS incurred prior to this Retroactive Date.

a:  The Limit of Liability for Coverage A - FINAL CLOSURE COSTS is
US $<u>800,000</u> per CLAIM
US $<u>800,000</u> total all CLAIMS.

b:  The Deductible Amount for Coverage A - FINAL CLOSURE COSTS is
US $<u>100,000</u> per CLAIM
US $<u>N/A</u> total all CLAIMS.

a:  The Limit of Liability for Coverage B - PARTIAL CLOSURE COSTS is
US $<u>N/A</u> per CLAIM
US $<u>N/A</u> total all CLAIMS.

b:  The Deductible Amount for Coverage B - PARTIAL CLOSURE COSTS is
US $<u>N/A</u> per CLAIM
US $<u>N/A</u> total all CLAIMS.

Ed. 10 97)

Item VI:  a:  The Limit of Liability for Coverage C - POST-CLOSURE CARE COSTS is
US $800,000 per CLAIM
US $800,000 total all CLAIMS.

        b:  The Deductible Amount for Coverage C - POST-CLOSURE CARE COSTS is
US $100,000 per CLAIM
US $N/A total all CLAIMS.

Item VII:  The total POLICY PERIOD aggregate Limit of Liability for all CLAIMS under Coverages A through C, as applicable,
under this Policy is US $800,000.

Item VIII:  The CLOSURE PLAN prepared in order to comply with CLOSURE/POST-CLOSURE CARE REGULATIONS is
identified as:
The Closure Plan for the RCRA Regulated Storage Tanks at the Research Oil Co. Facility

Item IX:  The POST-CLOSURE PLAN prepared in order to comply with CLOSURE/POST-CLOSURE CARE REGULATIONS is
identified as:
The Closure Plan for the RCRA Regulated Storage Tanks at the Research Oil Co. Facility

Item X:  The CLOSURE/POST-CLOSURE CARE REGULATIONS which govern the Closure and/or Post-Closure Care of the
COVERED LOCATION(S) are:
3745-55-47 and 3745-66-47 of the Ohio Administrattive Code

Item XI:  The REGULATORY BODY acting in accordance with the CLOSURE/POST-CLOSURE CARE REGULATIONS is:
Ohio EPA

Item XII:  Covered Locations(s):    2655 Transport Road
Cleveland, OH 44115

Item XIII:  Policy Premium: US $16,000  (25% minimum earned)
The Policy Premium is XX pre-paid or payable in _____ equal installments due on _____.

Item XIV:  The INSURED'S Broker/Representative is:    Ms. Linda Troyer
Aon Risk Services, Inc.
1660 West 2nd Street, Suite 650
Address:    Cleveland, OH 44113

Item XV:  Forms and Endorsements Attached to this Policy at inception date:
ED 70 04 (Ed. 10 97)
Endorsement No. 1
Endorsement No. 2
Endorsement No. 3

2

ED 70 04 (Ed. 10 97)

1 2